UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-10499-GAO

WELLS FARGO BANK, N.A and ORLANS PC,
Plaintiffs,

v.

THOMAS FRAZE et al.,
Defendants.

OPINION AND ORDER
April 2, 2020

O'TOOLE, S.D.J.

Wells Fargo Bank, N.A. and its attorney Orlans PC filed this interpleader action seeking a determination as to the respective rights of the defendants, Thomas Fraze and the United States of America,[1] to surplus funds totaling $15,456.93 derived from a foreclosure sale of certain real property in Framingham, Massachusetts. Fraze is the former owner and mortgagor of the property. The United States Department of Housing and Urban Development held a second mortgage on the property, subordinate to the first mortgage held by Wells Fargo. Both Fraze and the United States filed answers claiming entitlement to the full surplus funds. Fraze also asserted a counterclaim against the plaintiffs and a cross-claim against the United States. The United States has moved for judgment on the pleadings. See Fed. R. Civ. P. 12(c). Although Fraze has appeared in this case and has been served with the motion, he has not filed any opposition. Consequently, the United

---

[1] Plaintiffs named Ben Carson, Secretary of Department of Housing and Urban Development ("HUD"), as a defendant but the United States is the only proper party pursuant to 28 U.S.C. § 2410(a). The United States' request to be substituted for HUD and the Secretary of HUD has been granted.

States' motion stands unopposed. For the reasons outlined below, the United States' motion is GRANTED.

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). The Court takes as true all well-pled factual allegations, which must state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

The following facts asserted in the pleadings are, in the absence of opposition, undisputed:

Fraze purchased the property in 2008. In January 2009, Fraze granted a mortgage to a creditor in the amount of $220,144.00, which mortgage was later assigned to Wells Fargo. In January 2017, the property was sold by Wells Fargo at a foreclosure auction for $199,000.00. After Wells Fargo's lien was extinguished by application of the proceeds, there was a surplus remaining of $15,456.93.

Under Massachusetts law, junior lienholders get an "equitable lien" to the surplus proceeds of a foreclosure sale by a senior mortgagee. Perry v. Blum, 629 F.3d 1, 14–15 (1st Cir. 2010) (citing First Colonial Bank for Sav. v. Bergeron, 646 N.E.2d 758, 759 (Mass. App. Ct. 1995)). As a junior mortgagee, HUD was presumptively entitled to the surplus.

The United States argues that judgment on the pleadings in its favor is appropriate because HUD's claim to the surplus funds is superior to the equity redemption interest claimed by Fraze and that interest in the surplus funds is unaltered by HUD's filing in 2017 of a notice of discharge of Fraze's debt required under a particular regulation of the Internal Revenue Service. In April 2017, after the foreclosure sale, HUD sent Fraze an IRS Form 1099-C, titled "Cancellation of Debt," for the tax year 2017, indicating that HUD had discharged Fraze's debt in the amount of $59,965.62. (Fraze's Answer, Countercl. and Cross-Cl., Ex. B (dkt. no. 4-1).) Fraze asssserts in his

cross-claim that HUD's issuance of the IRS Form 1099-C effectively operated to discharge the debt he owed to HUD. Consequently, he asserts, he is the sole appropriate recipient of the surplus funds. The legal effect of a HUD's issuance of the Form 1099-C presents an issue of first impression in the First Circuit.

The filing of a Form 1099-C is required by the following IRS regulation:

> [A]ny applicable entity . . . that discharges an indebtedness of any person . . . of at least $600 during a calendar year must file an information return on Form 1099–C with the Internal Revenue Service. *Solely for purposes of the reporting requirements of section 6050P and this section*, a discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, *whether or not an actual discharge of indebtedness has occurred* on or before the date on which the identifiable event has occurred.

26 C.F.R. § 1.6050P–1(a) (emphasis added). The identifiable event which led to HUD's issuance of this Form 1099-C was "[a] discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt." 26 C.F.R. § 1.6050P–1(b)(2)(i)(G).

Based on the pleadings, and without a response to the contrary from Fraze, it appears that the Form 1099-C was filed to conform with IRS regulations, in satisfaction of a reporting requirement for tax purposes that arose regardless of whether "an actual discharge of indebtedness [had] occurred." There is no other evidence offered that HUD "actually" cancelled or discharged Fraze's debt.

This view comports with a majority of courts that have considered the significance of the filing of Form 1099-C and have held that the Form 1099-C itself does not operate to legally discharge or otherwise cancel the underlying debt, but rather is simply the fulfillment of a reporting requirement to the IRS. See F.D.I.C v. Cashion, 720 F.3d 169, 178 (4th Cir. 2013) (finding that the "approach taken by a majority of the courts to consider the matter ultimately more persuasive.

3

That analysis relies principally on the language of the IRS regulations and the purpose of a Form 1099–C.").[2] Without evidence of an actual discharge of the HUD debt, the United States stands as the junior lienholder of record, has an equitable lien against the surplus funds, and thus holds a superior interest to Fraze.

For these reasons, the Motion for Judgment on the Pleadings (dkt. no. 17) is GRANTED. Judgment shall be entered declaring the United States to be the proper recipient of the funds.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
    Senior United States District Judge

---

[2] Other courts have similarly held that a Form 1099-C does not operate itself to discharge or cancel a debt. See, e.g., Walker v. Ocwen Loan Servicing, LLC, No. CV 16-9157, 2017 WL 2957933, at *3 (D.N.J. July 11, 2017); United States v. Reed, No. 3:09-CV-210, 2010 WL 3656001, at *2 (E.D. Tenn. Sept. 14, 2010); In re Zilka, 407 B.R. 684, 687–92 (Bankr. W. D. Pa. 2009).